2023-1760. Good morning, Mr. Hearn. Good evening, Your Honor. It may please the Court. I am Thore Hearn and I am the counsel for the landowners in this case, the Indiana landowners. This is a Trails Act taking case. It involves the appeal by the owners of 10 parcels of land in Indiana. And the key issue in this case determines upon whether the interest that these owners predecessor entitled granted the Peru Indianapolis Railroad in the 1840s was an easement or a title to the fee estate in the land. If it's an easement, then the government that easement terminated in the government must pay the owner's compensation. If the railroad, on the other hand, held title to the fee estate, fee simple estate, then the government need not pay. Now, you've asked us to certify this case to the Indiana Supreme Court. And an issue is whether each of the Newcastle and railroad cases, whether each of them is simply dictum on the question of a fee simple. If we conclude that the statements of this nature are dicta, multiple, and we can look at the charter and conclude that it sounds like, the language sounds like an easement, then we don't need to certify it, right? That would be correct if the court found that this was in fact, which we believe is absolutely the case, that the text of the documents that define the interest of railroad are in fact clearly a easement, then there would not be a need to certify. But we do believe that this is a case of great importance to Indiana, that the Indiana Supreme Court has indicated a past, not just willingness, but invitation for these cases to be certified to them should there be any doubt on the part of the court. Are there cases in the past where involving these rails-to-trails cases before the Court of Federal Claims or our court where such an issue was sent to the Indiana Supreme Court? Yes, Your Honor. The first one was Macy Elevator. That was a case in the Court of Federal Claims where the government itself wanted to have the case certified. In that case, Judge Firestone found that under the Indiana statute, it could not be certified, or she didn't believe it could. And then there was the Howard series of cases. Macy Elevator was at 97 Federal Claims, 708. Howard 1 is the case where Judge O'Brien came to a contrary conclusion, did certify the case to Indiana, and Indiana then in a series of two decisions accepted certification and then answered the question. In that case, the question was the scope of the easement that was granted, but it was a very similar question involving the interpretation of the real estate or the real property interest that was at issue in a H and D to a railroad line. And so in that respect... Counsel, do you agree that the language that's in rail is very similar to the language that is here in this case? The language in rail, Your Honor, I'm not clear which language in rail. I don't believe rail answers the question at all that was before the court in interpreting whether it And on that answer, or that point, I know that the advocates brief of Professor Ewing and Professor Saxer provide a very good detailed discussion of both rail and the other Indiana Supreme Court decisions concerning this very issue. Well, let me ask you this question. How is the portion of rail discussing what land was conveyed, in your opinion, dictum? Well, it is discussing in rail what they were discussing was the nature of the railroad's chart and what authority the railroad had under their chart. Not so much whether it was a fee versus easement, because rail involved a situation where you had a strip of land adjoining... Counsel, I'm sorry. I'm going to interrupt you because we have read it. And let me ask you this. The court in rail quoted part of the agreement at issue there, and it says, I think it says, and assigns release and relinquish to the Peru and Indianapolis Railroad Company the right of way for so much of said road as may pass through. And so is that language, it seems to me, that specific language that's in the agreement that was being evaluated in the rail case, that language looks very similar to the language in the agreements at issue in this case. Do you agree with that? If the question is whether the language in the release document... Yes. ...is the similar, I would agree with that. But I do not agree that the court in rail was deciding whether that language was fee versus easement as opposed to the other questions in rail. And that was particularly... What about the specific language that says that relinquishment, as we have construed it, supplemented by section 19, of course, which is about the incorporation, enacting that the right of way when acquired should be held by the company in fee simple, purported to convey to the company an estate in fee simple. So why doesn't that resolve the question? When you read the language, I have two answers to the court's question. The first answer is when you read rail, the rail reference to the charter of the railroad says that the railroad had the capacity, the legal authority capacity to acquire fee simple title. But that's not what is... The railroad can certainly acquire less of an interest, i.e. an easement, than simply getting fee simple title. So you can't use the charter of the railroad, which said as the railroad has the ability... That's a different question, though. Whether you agree with what the court said in rail is a different question than what does rail hold. And so I just read some language from I think it is dicta because, and again, I cite to the amicus brief of Professor Satcher and Ely because they get into a detailed discussion of that relative to the other Indiana law. But when you look at the other Indiana Supreme Court decisions, they have never read rail in the way that the Court of Federal Claims did, as saying, with this instrument, we conclude this must mean that the interest the railroad acquired was fee simple absolute title to the land. That is not how any Indiana court has ever read rail. Well, I would say that at least the Indiana Supreme Court, I believe, has addressed in Cleveland, Columbus, Cincinnati, and Indianapolis Railway Company versus Coburn, how it would interpret what I'm going to call kind of the Newcastle slash rail rule, so to speak. Have you read that case? Do you know the case of which I speak? I have, Your Honor, and I would refer to the Indiana court's decision in the more recent cases, which also looks back at the Indiana history of the cases. And it does not read, the Indiana Supreme Court currently does not read rail in the same manner that the Court of Claims did. And again, that's where I struggle back. I assume that you may have another argument, counsel, that you want to make. But if you just look at this case that I'm pointing to, where one of the parties is Coburn, if you look at the pages 559 to 560, and it's talking after it cites to Newcastle there, that under this construction, unconditional relinquishment of the land, undoubtedly would invest in the railroad company the absolute fee simple of the land. So I feel like if you're at least looking at this, and this is an example of a case, if you have access to it, would be supportive of what I and Judge Stoll have been talking to you about as to what the Indiana Supreme Court has previously held in similar circumstances. And again, I refer to the LNG Realty case, which is one example, and then the more recent Ross case, where the Indiana Supreme Court looks at these kind of instruments to railroads. And this is where we get to the certification question, because clearly there's a debate in the ambiguity here about what Indiana law holds. Are those cases that you're talking about, are they referring to the language in Newcastle as well? I mean, it sounds like you're saying the Cleveland case should be disregarded because later cases interpret Newcastle differently. When you say Newcastle, the case in Newcastle was not interpreting a fee versus easement issue at all like this. Newcastle has even the court of claims... I was talking about the Coburn case that was looking at Newcastle and discussing Newcastle. I don't understand Coburn to reach that conclusion, but I would have to frankly look at my notes on Coburn to give you a very precise citation of that. In fact, Coburn arguably overruled the suggestion of Newcastle and railed that these written release documents would have conveyed a fee, simple estate in the land. And again, going back to just fundamental principles of Indiana deconstruction that the Indiana Supreme Court has repeatedly affirmed, these pre-printed forms or printed blanks on them that are called a release and they refer to the interest as a right of way, that is clearly an easement, a reference to an easement, not a reference to the fee symbol of the state. For example, the fee symbol of the state would include the mineral interest in the strip of land below the former railroad line. It would include the air above it. This is certainly much more than any interest the railroad needed. And that was clearly contrary to doctrinal public policy that the Indiana Supreme Court has repeatedly affirmed. Counsel, you went through your rebuttal time. You can continue or save it. I will save it, Your Honor. Thank you. Mr. Frankel. Good morning, Your Honors, and may it please the Court. David Frankel on behalf of the United States. By this appeal, plaintiffs seek to unsettle the law and upend property rights that have been well established for generations. Under Indiana law, certification is available only if there is a lack of clear controlling precedent. But the question at the heart of this appeal was resolved over 170 years ago by the Indiana Supreme Court. It was confirmed about 30 years after that, and then in subsequent decisions of both the Indiana Supreme Court and Indiana appellate courts, it has been reaffirmed as binding precedent. You're talking about Newcastle and Royal, right? Newcastle and the other two primary cases, yes. Newcastle deals with whether a railroad can transgress another railroad. It didn't depend on the question of fee simple versus easement. Is that right? That was the dispute in that case. So the statement with respect to fee simple is dictum? I don't read it that way, because the statement about fee simple was essential to the reasoning of the case, because the question in that case was what interest the railroad got and how to interpret these exact provisions of the charter. And in finding against plaintiffs and against the railroad in that case, the rationale the court relied on was that the conveyances were in fee simple, not something different. And in doing that, it went through section 19 of the charter and explained exactly what that language mean, and explained that that language, that it provided fee simple rather than a different kind of interest. Well, section 19 is sort of ambiguous. It talks about a right of way and fee simple. But when you look at section 15, it talks about so much of the land as is necessary for the construction of the road. That's sort of minimizing language rather than broadening language, and it sounds like an easement. And that same language is in the releases. It talks about right of way. So, I mean, it's true that I think an important background point is right of way can have two different meanings. I think right of way can mean a right of access over a parcel, or right of way can also mean the strip of land and the parcel itself in fee simple. And I think what the charter does here is the charter embodies the legislature's intent that when the Peru and Indianapolis Railroad Company would acquire right of ways, including under section 15, that the effect of that would be to acquire in fee simple. And that was a legislative directive pursuant to this specific railroad's charter. Is the release and relinquish language helpful for the court's determination in either rail or Newcastle about it being a conveyance in fee simple? I'm not aware that the court focused on those, but I do think what's important is that that language mimics section 15 of the charter. So it uses language that was in the section 19, and this is I think the holding of Newcastle, is that section 19 directs how conveyances under section 15 worked. And when they relinquish pursuant to section 15, that they shall be seized in fee simple of the right to such land, and they shall have so use and occupancy of the same. So the release and relinquish language in the releases is a call back to section 15 of the charter. I think Newcastle is precedential on the idea that what does it do when you invoke section 15? Under section 19, it's a taking in fee simple and not a taking of a lesser interest. What's the most recent Indiana court to apply the rule in Newcastle and rail? I believe that would be the Meyer case, which I think 1916 would be the most recent case. But I think what's important here is that all of these cases remain good law. And the length of time, if anything, cuts against plaintiff's argument. These are property rights. There is a special need for predictability and certainty to understand who owns what interest respectively. And the property rights within this specific rail corridor for conveyances to this company under this charter using exactly the language in these releases has been a settled question for generations and has undoubtedly given us... I would respond to opposing counsel's point that under how contracts would be interpreted under the current law, we probably wouldn't look to the railroad's charter to figure out what that release means. I think there are some more recent Indiana law discussing how you would read the question of what is or is not a right of way, but the basic rationale on which Newcastle and rail stand is the idea that companies that were created by these individualized charters, those charters defined their operations and those charters had to be read into the contracts. And this is a legislative determination of the Indiana legislature that when this specific company took in right of way under section 15 of the charter, that under section 19 it was taking in fee simple. I think that was the law then. That was the law that was affirmed in Newcastle. It was reaffirmed 30 years later. There's an unbroken stretch of law about how this charter interacts with the releases under this charter. And again, when you say reaffirmed, you're referring to Meijer. Well, Meijer is only one case. I mean, Meijer is one case, but I would say there's Newcastle, which goes very directly to the operation of section 19. There's rail, which to the extent there's any daylight between how the charter operates in the abstract and how it operates in the context of a particular release with this language, rail eliminates any daylight there. I mean, rail is precedential on this specific release language. And then you have Coburn after that. You have Douglas after that. Both of those cases look back, I believe one to Newcastle and one to rail, and cite as binding precedent these specific holdings of these cases. I mean, I think Coburn talks about the idea, well, you know, maybe if this wasn't an open question, we could look at it differently. But it's not an open question. It's one that has been resolved. What is your response to opposing counsel pointing us to other cases like Roth that he says presents the current kind of public policy that the Indiana Supreme Court would be following? I just think they don't have relevance here because they don't involve the issue here, which is conveyances under this specific charter using these languages would have to be construed according to particular rules elected by the Indiana legislature in this case. I mean, I think the legislature's language is clear, and under Indiana law, about how to read charters into, you know, charters pre the general railroad statute in 1853, how to read that into these releases. And then, you know, there's five different. I'm uncertain about whether or not we think rail and kind of the progeny answer this question. What is your position on certification to the Indiana Supreme Court? I mean, well, our top-down position is that certification is unavailable because of the presence of clear control precedent. But I think there's a lot of sort of soft reasons in this case, why even if certification was available, this court shouldn't take that opportunity. You know, I think the Supreme Court has talked about the need for novel and unsettled questions of law. And, you know, certification is not a procedure where you think, well, the court might say something different now than it used to say. I understand Mr. Hearn to say that on at least two occasions, the Court of Federal Claims has certified a question to the Indiana Supreme Court. Yeah, no, that's right. And the United States has asked for certification to the Indiana Supreme Court even. We agree that certification is a powerful tool in the context of a case where there is real doubt about what a state's law says. You think by now they might think that we ought to be able to figure out the cases on our own? I mean, I think what this court has said, I'll go back to this court's salmon and toes. I'm probably saying that wrong. But, you know, that really the court should certify only in the presence of real doubt. That certification is a procedure that burdens the resources of courts and parties. It adds delay. And it's only for cases where there's real uncertainty and real doubt about how a court would come out. And this is a case where also there's the underlying issue that this involves real property titles. And there's a special need for certainty and predictability and the likelihood that even if it had the power, I don't think it has the power to, you know, I don't think this court has the power to certify a question on the thought that a court might revisit its prior precedents. But I think the chances of that are very slim in this case. We're talking about real property interests that landowners, that railroads, that governments have relied on for centuries, for generations in this case. Do we lack the power to certify or is it that they might simply turn us down? Well, so I would say that certification is available only if it meets the Indiana Supreme Court's test and then they have the discretion to take it or not take it. But also the United States Supreme Court has said when a federal court certifies to a state court, it should be because there's a novel or unsettled question of law. And this is just not a case that presents a novel or unsettled question of law. I mean, I'll just come back, I think, to what is really fundamental about these cases, which is the language that the Indiana Supreme Court has used. And I'll just quote a little bit here. But the court explained that when the company had, quote, procured a right of way under the charter, it had acquired a fee simple title. In rail, the court reiterated that when a grantor, quote, conveyed to the company an estate in fee simple to so much of land, that one of the very certain notices here conveyed to the company an estate in fee simple to so much of the land as constituted the right of way. All of these parts of the decisions, that language, are essential to the court's decisions in both cases. They're not dicta. If there's any doubt about whether they're dicta, the Indiana Supreme Court itself has answered that question in saying it's not, saying that these are holdings in subsequent cases in Coburn and Douglas. And, you know, we would ask the court to affirm that. I don't have anything else to add here. I'm happy to rest on my briefs and cede the rest of my time unless there are further questions. Thank you, counsel. Mr. Horan has some rebuttal time. Yes, please. I will use the remaining time. I note several points very briefly. First off, in Macy Elevator, the court had before it the exact same material, same documents that they have in this case. And in that case, the government agreed that they conveyed an easement not titled to the fee estate. There was a disagreement over the scope and there was no disagreement over the interest conveyed was a easement. Second point I make is the use of the term right-of-way describes the interest. And this court itself recently in Barlow, 86 F4 1347, said as much. So did the Supreme Court. But that was under a different, counsel, that was under a different law, right? It was under Illinois law in Barlow, right? Well, it's a term right-of-way is a term we use referencing real estate just like the Supreme Court. But just answer my direct question. Wasn't Barlow under Illinois law, not Indiana law? Sure. It was under Illinois, but not Indiana. But the word has a common meaning that courts apply to it when it's dealing with an interest in real property. And that is right-of-way is an easement, as the courts have said. And I note two final points. The reference to the charter as the source of the nature defining the railroad's interest in this piece of real property, the charter is not part of the transaction. The document that defines the interest, the owner of the real property granted to the railroad is found by looking at the actual written text of the document, which are these release documents that were preprinted forms of railroad use. The railroad's charter, I'll go back anywhere in history, does not define in the nature of a transaction between two private parties. If I'm buying or selling property to a railroad, I don't have to go read their charter to define whether I'm getting an easement or a fee estate. And the final point I note on the charter is that if that argument is accepted, that the railroad's charter defines the nature of its real property interest, then every piece of property that these railroads that were chartered back in the 1860s acquired would be fee simple notwithstanding the language in the actual document between the parties. Then finally, I note on the certification question, I agree with my friend that it is a very important concept of property law, and property law is intended to be stable and certain and not change. And that is why there's any ambiguity that it should be certified to the Indiana Supreme Court. And what I'm saying here is in terms of the novelty of this, is particularly the novelty of the application that the court of claims made or the interpretation of rail and Newcastle, that's the novelty that is being applied here. And this would potentially affect many, many other property owners with these ancient right-of-ways across their property. And to that extent, it does have implications for Indiana public policy, as I mentioned, the Stripping Gore Doctrine, the Centerline Presumption, and even the more recent Indiana Supreme Court decisions interpreting conveyances of an interest to a railroad. I have nothing further. Thank you. Both counsel, the case is submitted. That concludes today's arguments.